IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


MICHAEL RAY REEVES,

      Petitioner,

v.                                    No. 12-cv-630-DRH-PMF

MIKE ATCHISON, Warden,

      Respondent.

### MEMORANDUM AND ORDER


**HERNDON, Chief Judge:**

## I.     Introduction

This matter comes before the Court on Magistrate Judge Philip M. Frazier's September 12, 2013 Report and Recommendation ("the Report") (Doc. 16). The Report recommends that the Court deny Michael Ray Reeves' petition for a writ of habeas corpus and dismiss the case. Reeves filed a response (Doc. 19). Based on the following, the Court **ADOPTS** the Report in its entirety.

On May 15, 2012, Reeves, *pro se*, filed a petition for writ of habeas pursuant to Section 2254 (Doc. 1). In accordance with that section's threshold review procedures, Reeves' petition was screened and the Court issued an order dated August 28, 2012 dismissing all but Count 8 of Reeves' petition. In Count 8, Reeves alleges that his convictions are invalid because he was deprived of his right to a speedy trial following remand from the Illinois Appellate Court. The Government responded arguing first that petitioner had not yet exhausted his

state court remedies and second that the state appellate court's decision rejecting Reeves' speedy trial argument was neither contrary to, nor an unreasonable application of, United States Supreme Court Precedent (Doc. 9).   Petitioner thereafter replied and filed a supplement to his reply (Doc. 10, 15).

On September 12, 2013, pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Frazier submitted the Report recommending denial of Reeves' petition. The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" by September 30, 2013.   Reeves requested, and received, an extension of time to file objections until October 15, 2013.   On October 9, 2013, Reeves filed a response to the Report (Doc. 19).   In his response, petitioner opposes the appellate court's "unreasonable determination of the facts" and generally reargues his case (Doc. 19 at 1).

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1).   Here, petitioner's "objections" do not specify how he believes the magistrate judge made a specific error such that the Court cannot conclude that these are objections as contemplated by 28 U.S.C. § 636(b)(1).   If a party fails to object to a magistrate's report and recommendation, or objects to only some parts of the report, he waives review of the issues on which he has not objected.   *Johnson v. Zema Sys. Corp.,* 170 F.3d 734, 742 (7th Cir. 1999).   Although petitioner did not object to the Report, this Court is not precluded from reviewing it and will do so de novo.   *See Schur v. L.A. Wight Loss*

*Centers, Inc.*, 577 F.3d 752, 760-61 (7th Cir. 2009).   In making a de novo determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues to which specific objection has been made.   *Willis v. Caterpillar Inc.,* 199 F.3d 902, 904 (7th Cir.1999).   In this case, the Court will review the entirety of the record.   After such de novo review, the Court may "accept, reject or modify the recommended decision."   *Id.*

## II.   <u>**Background**</u>

In 2000, petitioner, facing charges in Massac County and Johnson County, Illinois, fled to Nevada.   While in Nevada he was convicted of additional offenses (discharging a firearm into a building, resisting a public officer with a dangerous weapon, and possession of a stolen vehicle).   Petitioner was returned to Illinois in early 2001 and was thereafter convicted after a jury trial in the circuit court of Massac County of three counts of aggravated criminal sexual assault and one count of aggravated kidnapping (Doc. 1-1 at 2).   He was sentenced to 52 years' imprisonment (*Id.*).   After his trial, he was returned to Nevada to serve his prison sentence for his conviction there.

On direct appeal, petitioner's case was remanded for a new trial because the trial court had failed to appoint a psychiatrist to investigate a possible insanity defense.   *People v. Reeves*, No. 5-01-0883 (Sept. 30, 2003).   The mandate remanding the case was filed by the circuit court on November 3, 2003 and petitioner was brought back to Illinois on February 13, 2006.   He was then retried

in 2007, again found guilty on all four counts, and sentenced to 52 years in prison.

Reeves appealed the trial court's decision arguing that he was denied his constitutional right to a speedy trial and that one count of aggravated criminal sexual assault should be reversed because the evidence was insufficient to prove the element of penetration beyond a reasonable doubt (Doc. 1-1 at 2-3). The Illinois Court of Appeals affirmed. *People v. Reeves*, No. 5-08-0181 (Nov. 14, 2011). On March 28, 2012, the Illinois Supreme Court denied petitioner's petition for leave to appeal (Doc. 1-1 at 10).

### III.  <u>Analysis</u>

Reeves' habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal habeas court's role in reviewing state prisoner applications was modified by AEDPA "in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Habeas relief is denied unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court hearing." 28 U.S.C. § 2254(d).

#### A. Unreasonable Determination of the Facts

Reeves's primary assertion in his response to the Report is that the appellate court's decision was based on an unreasonable determination of the

facts.  The following is the relevant excerpt of the Rule 23 decision by the Illinois Appellate Court, Fifth District.  *People v. Reeves*, No. 5-08-0181 at 4-7 (Nov. 14, 2011).

Defendant first argues on appeal that he was denied his constitutional right to a speedy trial. Defendant points out that our mandate remanding his cause was filed by the circuit court on November 3, 2003. He, however, was not brought to Illinois until February 13, 2006, more than two years after the mandate was filed, and did not appear before the circuit court until February 23, 2006. He further points out that he filed a *pro se* motion to dismiss the charges on October 6, 2004, while still being held in Nevada. While a delay of more than one year does appear at first sight to be unreasonable (see *People v. Crane,* 195 Ill.2d 42, 46–48, 743 N.E.2d 555, 562 (2001)), we do not believe defendant's constitutional right to a speedy trial was violated in this instance.

Both the United States Constitution and the Illinois Constitution guarantee an accused the right to a speedy trial. U.S. Const., amend. VI; Ill. Const.1970, art. I, § 8. Under *Barker v. Wingo,* 407 U.S. 514 (1972), four factors are to be considered in determining whether a defendant's speedy trial right has been violated. *People v. Kaczmarek,* 207 Ill.2d 288, 294–95, 798 N.E .2d 713, 718 (2003). The four factors are the length of delay, the reasons for the delay, the defendant's assertion of his right, and prejudice, if any, to the defendant. *Barker,* 407 U.S. at 530. In examining the four factors, no one factor is dispositive. *Kaczmarek,* 207 Ill.2d at 295, 798 N.E.2d at 718.

Here the delay between our mandate and defendant's arrival in Illinois was over two years. During this time, defendant was serving a sentence in Nevada for other offenses, however, and contrary to defendant's assertions, his case was not ignored by the State between the date of remand and his return to Illinois. On December 2, 2003, a status hearing was held at which time an attorney was appointed to represent him and a bench warrant was issued. On February 26, 2004, additional counsel was appointed to represent defendant. On September 28, 2004, defendant's attorney was instructed to deal with the Nevada authorities to find out defendant's release date. On October 6, 2004, defendant filed his *pro se*

motion to dismiss. Defendant's attorney later filed an amended motion to dismiss with prejudice on February 17, 2005, alleging violation of defendant's speedy trial rights. It was noted at that time that the assistant State's Attorney was to continue with extradition proceedings. Defendant had been provided with extradition forms several months prior to September 28, 2004, but defendant had not responded. The record shows that the process to bring defendant back to Illinois for retrial was started as early as December 2, 2003, one month after his case was remanded. While awaiting retrial, defendant failed to contact his attorneys concerning the detainer process and failed to respond to communications pertaining to waiving extradition. Defendant had the opportunities and the tools to move his case along at a faster pace if he so desired. Moreover, when defendant decided to do something, he chose to file a *pro se* motion to dismiss. He, however, did not properly assert his right to a speedy trial through that motion as he was represented by counsel. A represented defendant cannot simultaneously proceed *pro se* and by counsel, and therefore his motion was not properly before the court. *People v. Flynn,* 341 Ill.App.3d 813, 821, 792 N.E.2d 527, 535 (2003). Defense counsel filed an amended motion to dismiss requesting that the charges against defendant be dismissed with prejudice because of the State's alleged failure to bring him to trial in a timely manner, but it too did not demand a speedy trial. Defendant also did not follow the proper procedure under the interstate agreement on detainers (Agreement) (730 ILCS 5/3–8–9 (West 2004)). A defendant may not file a valid request for a speedy trial under the Agreement until a detainer is lodged against him by the State. See *People v. Daily,* 46 Ill.App.3d 195, 200, 360 N.E.2d 1131, 1135–36 (1977). More importantly, however, we agree with the State that defendant did not suffer prejudice as a result of the delay. Defendant argues that, because of the delay, the appointed psychiatrist could not properly determine whether defendant was insane at the time of the kidnaping and sexual assaults. As the State points out, three years had already lapsed since the offenses took place when we remanded his cause for retrial. If we were to accept defendant's argument, there would have been no purpose for the remand in the first place. Additionally, defendant had already been evaluated by a psychiatrist in Nevada shortly after his arrest in that state who opined that defendant suffered from paranoid schizophrenia. The psychiatrist who

examined defendant in Illinois was able to use this evaluation as the basis for his own conclusion that defendant was mentally ill at the time of the offenses. We further note that even after defendant was returned to Illinois, defendant himself contributed to delaying his trial by nearly another two years. He filed numerous motions that delayed his trial, including two motions for substitution of judges. He also requested new counsel or requested to proceed *pro se* several times throughout the proceedings. Clearly, any delay did not impair the presentation of his defense. Defendant therefore cannot establish that he was prejudiced by the delay prior to retrial. Accordingly, after weighing all of the *Barker* factors, even though the delay between remand and retrial may have been lengthy, we conclude that defendant's constitutional right to a speedy trial was not violated.

Petitioner's response contains several specific claims regarding the factual findings of the state court.  They can be summarized as follows: 1) he did not cause the delay after he was returned to Illinois, 2) his attorney failed to tell petitioner that he was petitioner's attorney therefore his *pro se* motion to dismiss should not have been denied, 3) he did not fail to waive extradition or request a speedy trial, and 4) the State's Attorney was to check with Nevada to find out defendant's release date, not defense counsel.

A determination of an underlying factual issue made by a State court is presumed to be correct unless petitioner can rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Baddell v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006).  However, the state court's ultimate factual determination is reviewed for reasonableness under Section 2254(d)(2).  *Ward v. Sternes*, 334 f.3d 696, 703-04 (7th Cir. 2003) ("As is the case under § 2254(d)(1), a petitioner's challenge to a decision based on a factual determination will not succeed if the

petitioner merely evidences that the state court committed error.  Instead, he must further establish that the state court committed unreasonable error.")

### 1. Petitioner's Contribution to the Delay Upon Return to Illinois

Petitioner first argues that he did not cause the delay after he was returned to Illinois.  He notes that after a delay caused by a defendant stops, the speedy trial term again runs.  He states that in this instance after he was returned for retrial on February 13, 2006, his retrial did not start until 651 days later, on December 11, 2007.  Petitioner fails to provide any evidence in support of his assertion that he did not contribute to the delay after he was returned to Illinois.  The Court therefore will treat as correct those statements in the state appellate court's decision regarding petitioner's involvement in the delay upon his return to Illinois.  *Reeves*, No. 5-08-0181 at 7.

### 2. Petitioner's Pro Se Motion to Dismiss

Petitioner next argues that his October 6, 2004 motion to dismiss should not have been dismissed because he was unaware that he was represented by counsel.  In support of his assertion, petitioner provides a January 8, 2004 letter from Anthony Lloyd (Doc. 19-1 at 2).  Petitioner specifically notes that in the letter Mr. Lloyd did not indicate that he was petitioner's attorney.  He also attached a copy of his motion to dismiss wherein he references documents received on March 26, 2004 by the Court (Doc. 19-1 at 14-20).  He also attached the documents to his motion.  He indicates that the documents request a speedy trial and waive extradition (Doc. 19-1 at 14-20).

It is well-established in this circuit that a *pro se* defendant has "no right to file a pro se brief *or* motion in any court while counsel represents him." *U.S. v. Rollins*, 309 Fed.Appx. 37, 38 (emphasis in original) (citing *US v. Gwiazdzinski*, 141 F.3d 784, 787 (7th Cir. 1998); *Hayes v. Hawes*, 921 F.2d 100, 101-02 (7th Cir. 1990)). While petitioner may not have known that he was represented at the time, this does not overcome the bright line standard. To do so would put countless denials needlessly in question. Further, petitioner's counsel later filed an amended motion to dismiss raising the same issues on petitioner's behalf. Therefore, the Court cannot conclude that there is an error of fact or law as it relates to this "objection."

### 3. Petitioner's Requests to Waive Extradition and a Speedy Trial

Petitioner next asserts that he did not fail to request waiver of extradition or a speedy trial. Specifically, petitioner asserts that his pro se motion to dismiss, containing a request for speedy trial and to waive extradition, should have been reviewed. In support of his assertion, petitioner again points to the January 8, 2004 letter from Mr. Lloyd (Doc. 19-1 at 2). Further, petitioner highlights that the letter states that it was petitioner's responsibility to waive extradition. However, as previously discussed, the state court did not commit a reversible error in deciding not to review the motion. Further, as discussed below, a motion to dismiss and the documents petitioner attached were not the appropriate procedures for requesting a speedy trial or to waive extradition.

Petitioner additionally argues that he waived extradition and demanded a trial to the Warden of Ely State Prison in Nevada.  In support of this assertion, petitioner provides a copy of his request for final disposition (Doc. 19-1 at 5). Petitioner also attaches the warden's response indicating that the document he submitted was not the appropriate form and that he should contact his caseworker presumably for assistance with this matter (Doc. 19-1 at 6). Petitioner indicates that he then sent this same form, the incorrect one, to Massac County and that it was received on March 26, 2004.  In support of this statement, petitioner attaches a copy of the track/confirm page from the United States Postal Service as well as the return receipt (Doc. 19-1 at 12, 13).

The state appellate court made several related findings of fact regarding petitioner's extradition waiver.  First, the court found that "[d]efendant had been provided with extradition forms several months prior to September 28, 2004, but defendant had not responded." *Reeves*, No. 5-08-0181 at 5.  Petitioner does not appear to address this specific point, especially as it relates to the forms. However, his assertion does address another of the state appellate court's findings.  Specifically, "[w]hile awaiting retrial, defendant failed to contact his attorneys concerning the detainer process and failed to respond to communications pertaining to waiving extradition." *Id.* at 6.  While it would be understandable that petitioner may not respond to Mr. Lloyd, given petitioner's assertion that he was unaware that Mr. Lloyd was his attorney, petitioner does not provide clear and convincing evidence that he appropriately requested either a

speedy trial or to waive extradition.   Therefore the Court will treat the state appellate court's determination of facts as they pertain to petitioner's role in requesting a speedy trial and to waive extradition as correct.

**4. The State's Attorney was to Check with Nevada to Find Out Petitioner's Release Date**

Finally, petitioner asserts that the state's attorney was to check with Nevada to find out defendant's release date, not petitioner's attorney as indicated in the state appellate court decision.   *Id.*   In support of this assertion, petitioner provides a copy of the docket sheet from his Illinois criminal case.   Petitioner marked next to a September 28, 2004 entry which specifically states, "SA will check w/ NV to find out Df's release date" (Doc. 19-1 at 4).   SA, as petitioner notes, is the state's attorney, not his attorney.   Therefore, this clearly and convincingly contradicts the state appellate court's factual finding on this point.  .

However, the ultimate factual determination supported by this factual error is that petitioner's "case was not ignored by the state between the date of remand and his return to Illinois." *Reeves*, No. 5-08-0181 at 5.   This ultimate factual determination is supported by the following evidence.   First, less than a month after the case was remanded, the state trial court held a status hearing wherein an attorney was appointed to represent petitioner.   Next, on February 26, 2004, petitioner was appointed additional counsel.   Third, on February 17, 2005, defendant's attorney filed an amended motion to dismiss alleging a violation of defendant's speedy trial rights.   Further, the Court notes that the state's attorney's role in finding out when petitioner was to be released from Nevada and

petitioner's own submission of a page from his docket sheet support additional activity on the part of the state between the remand for retrial and petitioner's retrial.  While the petitioner has certainly shown that the state appellate court has committed an error, the Court finds that the state appellate court's ultimate factual determination is reasonable.  *See Ward,* 334 F.3d at 703-04.

**B. Contrary to Supreme Court Precedent**

Having determined that the state appellate court's factual determinations were reasonable, the Court next turns to whether the state appellate court's decision was either contrary to or an unreasonable application of Supreme Court precedent.  A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided differently from the Supreme Court a case with "materially indistinguishable facts."  *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000).  A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  The Seventh Circuit has noted that the scope of federal review on habeas is "strictly limited," and that the unreasonable application standard is "a difficult standard to meet."  *Jackson v. Frank,* 348 F.3d 658, 661-662 (7th Cir.2003).

The Sixth Amendment guarantees a criminal defendant "the right to a speedy and public trial."  U.S. Const. amend. VI.  Under the *Barker v. Wingo*

balancing test, as relied on by both parties, the Court must review the following four factors to in determining whether a speedy trial violation occurred: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay prejudiced the defendant. *Barker,* 407 U.S. 514, 530 (1972).

The state appellate court correctly identified and appropriately recited the Supreme Court's precedent in *Barker*. Therefore, the question in this case is whether the state appellate court reasonably applied *Barker.* The state appellate court's decision indicates that the delay between the mandate to retry petitioner's case, November 3, 2003, and the start of his retrial, December 14, 2007, was over four years. The opinion notes that while this delay was lengthy and "appear[s] at first sight to be unreasonable," that several factors contributed to the delay. *Reeves*, No. 5-08-0181 at 5. First, petitioner was serving time in Nevada for other offenses. Second, during this time the state did not ignore his case but was actively working on it. Third, petitioner failed to contact his attorney concerning the detainer process and failed to respond to communications pertaining to waiving extradition. Fourth, petitioner had the opportunity and tools to move his case along more quickly but failed to do so. Fifth, he contributed to this delay by filing numerous motions including two motions for substitution of judges and several requests for new counsel or, alternatively, to proceed pro se.

The state appellate court also concluded that petitioner had never requested a speedy trial. Specifically, the state appellate court found that neither

the petitioner's pro se motion to dismiss nor the amended motion filed by counsel requested a speedy trial. In further support of its conclusion, the appellate court noted that petitioner failed to follow the appropriate procedure under the interstate agreement on detainers.

Finally, the state appellate court found that defendant was not prejudiced by the delay. Petitioner argued that because of the delay, the appointed psychiatrist could not properly determine whether defendant was insane at the time of the kidnaping and sexual assaults. However, the state appellate court found the state's reasoning persuasive, noting that, "three years had already lapsed since the offenses took place when we remanded his cause for retrial. If we were to accept [petitioner's] argument, there would have been no purpose for the remand in the first place." *Id.* at 6. Further, the state appellate court indicated that the petitioner had been evaluated in Nevada shortly after his arrest and that the psychiatrist's evaluation was used by the Illinois psychiatrist to support his own conclusion that the petitioner was mentally ill at the time of the offenses.

The Court finds that the state appellate court's decision was not a contrary or an unreasonable application Supreme Court precedent. The appellate court correctly identified and applied the appropriate constitutional standard. It concluded that "after weighing all of the *Barker* factors, even though the delay between remand and retrial may have been lengthy, we conclude that defendant's

constitutional right to a speedy trial was not violated." *Reeves*, No. 5-08-0181 at 7.

### IV.   Certificate of Appealability

Finally, "[t]he district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant." *Rules Governing Section 2254 Cases, Rule 11(A)*.  A COA may issue only if the applicant has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When the Court denies petitioner's Section 2254 petition on the merits and not merely for procedural reasons, the Supreme Court has found that the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Here, Reeves has failed to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Therefore, the Court declines to issue a COA.

## V.   Conclusion

Accordingly, the Court **ADOPTS** the Report in its entirety (Doc. 16). Petitioner Michael Reeves' petition for a writ of habeas corpus pursuant to Section 2254 (Doc. 1) is **DENIED** and Reeves' case is **DISMISSED with prejudice.**  The Clerk of the Court is **DIRECTED** to enter judgment accordingly.  Further, the Court shall not issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 3rd day of January, 2014.

David R.
Herndon
2014.01.03
20:11:52 -06'00'

**Chief Judge**
**United States District Court**